## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL HORAN, individually and
on behalf of all others similarly
situated,

               Plaintiff,

               v.

FORD MOTOR COMPANY,

               Defendant.

Case No. 1:21-cv-01116

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Horan brings a putative class action against Defendant Ford
Motor Company, alleging that he purchased a pre-owned 2014 Ford Escape with a
defective 1.6L EcoBoost engine—a defect Defendant knew about and failed to disclose
to consumers. Plaintiff claims: (1) violation of the Magnuson-Moss Warranty Act; (2)
breach of express warranty; and (3) violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act. *See* [1]. Defendant moves to dismiss all claims
pursuant to Federal Rule of Civil Procedure 12(b)(6), [48]. As set forth below, this
Court grants Defendant's motion.

## I. The Complaint's Allegations

In December 2017, Plaintiff purchased a pre-owned 2014 Ford Escape from
CarMax, a used car retailer. [1] ¶ 8. At the time of sale, the vehicle had approximately
30,000 miles on the odometer, and thus Plaintiff's vehicle was covered by Defendant's

New Vehicle Limited Warranty ("Limited Warranty"), which required authorized Ford dealerships to repair, replace, or adjust defective parts for five years or 60,000 miles. *Id.* ¶¶ 8, 42. The Limited Warranty provides, in pertinent part, as follows:

> Your vehicle's Powertrain components are covered for five years or 60,000 miles, whichever occurs first. The extended coverage applies to the Engine: all internal lubricated parts, cylinder block, cylinder heads, electrical fuel pump, electronic engine control unit, engine mounts, flywheel, injection pump, manifold (exhaust and intake), manifold bolts, oil pan, oil pump, seals and gaskets, thermostat, thermostat housing, timing chain cover, timing chain (gears or belt), turbocharger/supercharger unit, valve covers, water pump.

*Id.* ¶ 42.

Shortly after purchasing the vehicle, Plaintiff started to experience coolant loss problems. *Id.* ¶ 8. Subsequently, in January 2018, Plaintiff had the vehicle serviced at an authorized Ford dealership during his vehicle's warranty period. *Id.* The attempted repair failed to correct the issue, and Plaintiff continued to experience coolant loss issues. *Id.*

Plaintiff alleges that 2013–2016 Ford Escape and 2013–2014 Ford Fusion vehicles are equipped with dangerous and defective 1.6L EcoBoost engines prone to unusual noises, coolant loss, rough running, undue engine wear, overheating, and premature engine failure. *Id.* ¶¶ 1, 10. Plaintiff further alleges that the defective 1.6L EcoBoost engines present a significant safety risk, which can result in stalling, loss of control over the vehicle, and engine fires. *Id.* ¶ 1.

Plaintiff claims Defendant knew the defective 1.6L EcoBoost engines were susceptible to coolant loss and premature failure but concealed these facts from Plaintiff and other consumers. *Id.* ¶¶ 3, 14. Specifically, Plaintiff alleges that

Defendant became aware of the defective 1.6L EcoBoost engines through internal validation and testing procedures. *Id.* ¶¶ 14, 15. Additionally, Plaintiff alleges that Defendant became aware of the defective 1.6L EcoBoost engines through numerous complaints submitted to the National Highway Traffic Safety Administration's Office of Defects Investigation, as well as online websites, shortly after the vehicles became available for sale. *Id.* ¶¶ 12–14, 16. As further evidence that Defendant knew about the defective 1.6L EcoBoost engines, Plaintiff alleges that Defendant issued a series of recalls, from September 2012 to March 2017, to address coolant system leaks that were causing engine cylinder heads to overheat, crack, and leak oil. *Id.* ¶¶ 16–18.

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must include a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), and so that the Defendant has "fair notice" of the claim and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Mere conclusory statements "do not suffice," nor do "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Under Rule 12(b)(6), this Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all

3

reasonable inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). This Court need not, however, accept conclusory assertions and statements of law as true. *Id.*; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Finally, this Court is also limited to considering only the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III.  Analysis

Plaintiff sues for violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Count I), breach of express warranty (Count II), and violation of the Illinois Consumer Fraud Act (Count III). *See* [1]. Because the MMWA claim depends upon a viable breach of warranty claim, the Court begins its analysis with the breach of warranty claim.

### A.  Breach of Express Warranty

In Count II, Plaintiff alleges that Defendant breached an express warranty by failing to repair his 2014 Ford Escape. [1] ¶ 40–47. Defendant argues that this Court should dismiss Count II because: (1) Plaintiff failed to provide the required pre-suit notice of any breach; and (2) Plaintiff failed to allege sufficient facts that Defendant breached its Limited Warranty. [49] at 4–6.

As a preliminary matter, the warranty at issue here does not constitute an express warranty under Illinois law. *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 526 (7th Cir. 2003). In Illinois, an express warranty, as defined under § 2-

4

313 of the Uniform Commercial Code ("UCC"), pertains to the quality or description of the goods. *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007).[1] Under the UCC, an express warranty "obligates the seller to deliver goods that conform to the affirmation, promise, description, sample or model." *Id*. An express warranty is satisfied when the seller tenders conforming goods. *Id*. Conversely, an express warranty is breached if the seller delivers nonconforming goods. *Id*.

Although Plaintiff characterizes Ford's warranty as an "express warranty" or a "express limited warranty," it does not relate to the quality or description of the goods. The warranty covering Plaintiff's 2014 Ford Escape contains no affirmation, promise, description, sample, or model to which Plaintiff's car must conform. In fact, Defendant's warranty does not guarantee that each Ford vehicle will be entirely free from defects. [50] at 17.[2] Instead, the Limited Warranty provides:

> This warranty does not mean that each Ford vehicle is defect free. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period.
>
> The remedy under this written warranty, and any implied warranty, is limited to repair, replacement, or adjustment of defective parts. This exclusive remedy shall not be deemed to have failed its essential purpose so long as Ford, through its authorized dealers, is willing and able to repair, replace, or adjust defective parts in the prescribed manner. . . .

---

[1] The Illinois' Uniform Commercial Code governs the sale of goods, here the purchase of a car. *See generally* 810 ILL. COMP. STAT. 5/1-101 *et seq.*

[2] The Court may consider the terms of the Limited Warranty since the Complaint refers to the Limited Warranty and Plaintiff's claims remain based upon it. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022).

> Moreover, Ford and its authorized dealers are entitled to a reasonable time and a reasonable number of attempts within which to diagnose and repair any defect covered by this warranty.

*Id.*

By its plain language, the warranty promises only that Defendant will repair, replace, or adjust defective parts if they malfunction during the warranty period. In other words, the warranty constitutes "a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way." *Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 66 (Ill. App. Ct. 1996); *see also Darne v. Ford Motor Co.*, No. 13-cv-03594, 2017 WL 3836586, at *5 (N.D. Ill. Sept. 1, 2017) (characterizing Ford's warranty to "repair, replace, or adjust" defective parts on a vehicle as a "repair and replacement limited warranty"). As such, the warranty constitutes a limited repair warranty, not an express warranty, and the Court will review it as such.

While the UCC does not explicitly define when a breach of a limited repair warranty occurs, the Illinois Supreme Court has recognized that, generally, non-performance of a duty under the contract constitutes breach. *Mydlach*, 875 N.E.2d at 1059 (citing Restatement (Second) of Contracts § 235, at 211 (1979)). A vehicle manufacturer must perform under its promise to repair defective parts "only when, and if, a covered defect arises and repairs are required. In that event, if the promised repairs are refused or unsuccessful, the repair warranty is breached and the cause of action accrues." *Id.* Thus, under a limited repair warranty, a breach occurs when

the vehicle manufacturer refuses to repair or unsuccessfully performs the promised repairs. *Id*.

### 1. Pre-Suit Notice

Defendant first argues that Plaintiff's express warranty claim should be dismissed because Plaintiff failed to allege that he provided the requisite pre-suit notice to Defendant. [49] at 5–6. Plaintiff does not dispute Defendant's assertion but contends that he was excused from providing direct notice because Defendant had actual knowledge of the defect in his vehicle. [55] at 5–7.

Section 2-607 of the UCC requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILL. COMP. STAT. 5/2-607(3)(a). A sufficient notification of breach of warranty informs the seller that the particular "transaction is still troublesome and must be watched." 810 ILL. COMP. STAT. 5/2-607, Uniform Commercial Code, Comment 4.

This provision mandates that buyers "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996). Two exceptions to the direct notice requirement exist; notice is not required if: "(1) the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Id*. (internal citations omitted).

As to the actual knowledge exception, generalized knowledge about third-party

safety concerns fails to satisfy the UCC notice requirement. *Id.* at 590. The seller must be "notified that *this particular transaction* is troublesome and must be watched." *Id.* Although a manufacturer may be aware of issues within a specific product line, a buyer fulfills the notice requirement of § 2-607 only where "the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id.*

Here, Plaintiff contends that Defendant had actual knowledge of the defect in his 2014 Ford Escape based upon: (1) extensive internal testing of Ford Escape and Ford Fusion vehicles, consumer complaints, and recalls issued by Defendant concerning defective 1.6L EcoBoost engines; (2) Plaintiff's record of servicing his vehicle at a Ford dealership; and (3) Defendant's knowledge that all 2013–2016 Ford Escape or 2013–2014 Ford Fusion vehicles contain defective 1.6L EcoBoost engines. *See* [55] at 6. None of these provide sufficient pre-suit notice.

First, Plaintiff alleges that Defendant had actual knowledge of his vehicle's defects through extensive internal testing prior to the sale of Plaintiff's vehicle, consumer complaints submitted to the National Highway Traffic Safety Administration ("NHTSA") and online websites, and several recalls issued by Defendant. *Id.* Plaintiff's allegations regarding extensive internal testing—that Defendant tested a line of vehicles and became aware of defects—remain too generalized to satisfy the actual knowledge exception. Plaintiff fails to establish that Defendant had specific knowledge of the trouble with the *particular* 2014 Ford Escape purchased by Plaintiff as a result of this testing. *See Rodriguez v. Ford Motor Co.,*

596 F.Supp.3d 1050, 1055 (N.D. Ill. 2022) (holding that Plaintiff's "argument that Ford should have known of the defect because it tested the product line and became aware of the [defect] in its line of vehicles is too general to satisfy the exception"). Likewise, the existence of consumer complaints submitted to the NHTSA and online websites fail to satisfy the actual knowledge exception because they establish Defendant's knowledge of the third-party complaints but again offer no notice regarding this particular vehicle. *Id.*; *see also O'Connor v. Ford Motor Co.*, 477 F.Supp.3d 705, 715–16 (N.D. Ill. 2020) (following Illinois Supreme Court precedent holding that, although the manufacturer was unquestionably "aware of the safety concerns" regarding the vehicle model, the manufacturer's "generalized knowledge about the safety concerns of third parties is insufficient to fulfill plaintiffs' UCC notice requirement") (quoting *Connick*, 675 N.E.2d at 590). Further, a manufacturer's recall does not constitute an admission of a defect in a particular product but merely acknowledges the possibility of a defect in a certain class of products. *See Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 872 (Ill. App. Ct. 1997) (citing *Bagel v. Am. Honda Motor Co.*, 477 N.E.2d 54, 58 (Ill. App. Ct. 1985)). These sources of information fail to inform Defendant of the trouble with Plaintiff's 2014 Ford Escape. Thus, all these sources constitute generalized information concerning Defendant's product line, and Plaintiff's allegations fail to establish that Defendant had actual knowledge of the defect in Plaintiff's vehicle.

Second, Plaintiff contends that Defendant had actual knowledge of the defect in his 2014 Ford Escape because he brought his vehicle to an authorized Ford

dealership for repairs. This argument remains equally unavailing. As previously discussed, a breach of a limited repair warranty does not occur because the vehicle requires repairs in the first place; rather, it occurs when promised repairs are unsuccessful. *Mydlach*, 875 N.E.2d at 1059. Plaintiff brought in his vehicle for repairs, and Defendant attempted to cure the defect, albeit unsuccessfully. Plaintiff offers no allegation that Defendant knew that the repair was unsuccessful after the service was completed, and Plaintiff does not allege that he identified his vehicle or the alleged breach in a subsequent communication with Defendant. Absent any specific communication from Plaintiff notifying Defendant of the ineffective repair, Defendant could not have actual knowledge that the defect persisted. *See Darne*, 2017 WL 3836586, at *9 (holding that plaintiff's complaint to manufacturer's customer relationship center "without any allegation identifying which vehicle and which alleged breach it identified in a particular complaint" did not meet the requirements for actual knowledge); *see also Hanusek v. FCA US LLC,* No. 18-cv-509-NJR-GCS, 2019 WL 1239265, at *5 (S.D. Ill. Mar. 18, 2019) (holding that presenting a vehicle for repair at an authorized dealership does not provide sufficient notice to the vehicle manufacturer when the dealership was not provided "*specific information* about both the defect in his car and the express warranty that was allegedly being breached"). Thus, Plaintiff's act of presenting his vehicle to an authorized Ford dealership for repairs, without more, fails to satisfy the actual knowledge exception.

Finally, Plaintiff asserts that Defendant had actual knowledge of the defect in his vehicle because every product in the product line contains the defect. [55] at 6–7.

To be sure, in some instances, courts have determined that plaintiffs satisfy the actual knowledge exception when a defendant has knowledge of defects across entire product lines. For example, where a company allegedly made false representations about the health benefits of its product, the court held that the actual knowledge exception was satisfied because the company must logically know that a particular product sold to a particular person is defective if the company knowingly misrepresents the product's capabilities. *Hedges v. Earth, Inc.*, No. 14-cv-9858, 2015 WL 1843029, at *1, *3 (N.D. Ill. Apr. 21, 2015). In other words, the defect applied to each and every product sold because the company knew that none of its products could perform as warranted. *Id.* at *3.

Relying upon *Hedges*, Plaintiff argues pre-suit notice was unnecessary because Defendant knew about the defective 1.6 EcoBoost engines, and Plaintiff presented his vehicle directly to Defendant for repairs. [55] at 6–7. Thus, Plaintiff maintains that Defendant knew that his 2014 Ford Escape was defective. *Id.* This argument misreads the central holding of *Hedges*. Plaintiff does not allege that each and every 2013–2016 Ford Escape or 2013–2014 Ford Fusion is defective; rather, he alleges that Ford vehicles equipped with 1.6L EcoBoost engines are "prone" to coolant loss, rough running, undue engine wear, overheating, and premature engine failure. [1] ¶ 1. Nor does Plaintiff allege that Defendant knowingly misrepresented the vehicles' capabilities. *See* [50] at 17 (stating that the limited warranty provided: "This warranty does not mean that each Ford vehicle is defect free. Defects may be

unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs.").

Since Plaintiff failed to allege direct pre-suit notice to Defendant or otherwise qualify for either exception to the direct notice requirement, Plaintiff's complaint does not satisfy § 2-607 notice requirements. The failure to allege sufficient notice dooms Plaintiff's breach of warranty claim pursuant to § 2-607(3) of the UCC.

### 2. Facts to Support a Claim of Breach of Express Warranty

Having determined that Plaintiff failed to provide Defendant with pre-suit notice, the Court need not address whether Plaintiff alleged sufficient facts to support a breach of express warranty claim. But the Court nonetheless finds that, even if Plaintiff complied with the pre-suit notice requirement, his warranty claim still fails because Defendant was given only a single opportunity to repair the vehicle. To establish liability for breach of a limited warranty, a plaintiff must show the existence of a defect, that he provided notice to the warrantor and requested repairs, and the warrantor undertook repairs but failed to remedy the problem within a reasonable number of attempts. *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 949–50 (Ill. App. Ct. 2005); *see also Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 238 (Ill. App. Ct. 2004) ("Illinois law does require a manufacturer to make successful repairs within a reasonable time or a reasonable number of attempts."). Indeed, the Limited Warranty specifically states, "Ford and its authorized dealers are entitled to a reasonable time and a reasonable number of attempts within which to diagnose and repair any defect covered by this warranty." [50] at 17.

12

Here, Plaintiff only alleges that he brought his 2014 Ford Escape to an authorized Ford dealership for repairs once in January 2018. *See* [1] ¶ 8. Although Plaintiff makes the argument that Defendant could have made repairs on his vehicle prior to his purchase, these allegations remain insufficient because they are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Because Plaintiff alleges that he presented his vehicle to an authorized dealership once and made no further attempt to seek repairs from Defendant, his allegations fail to establish that Defendant had a full opportunity, let alone a reasonable number of attempts, to repair the purported defect. Accordingly, this Court grants Defendant's motion to dismiss Plaintiff's breach of express warranty claim.

### B.    Violation of the Magnuson-Moss Federal Warranty Act

Defendant also seeks to dismiss Plaintiff's MMWA claim, arguing that Plaintiff has not alleged a viable breach of warranty claim under Illinois law. [49] at 6; [56] at 6. In response, Plaintiff claims he has pled a viable underlying express warranty claim. [55] at 7.

The MMWA, a remedial statute, protects consumers against deceptive warranty practices. 15 U.S.C. § 2301 *et seq*. Section 2310 of the MMWA permits a consumer to file suit claiming to be "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this" Act, "or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310 (d)(1); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998). Put simply, MMWA allows consumers to enforce written and implied warranties in

federal court, borrowing state law causes of action. *See Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 313–14 (7th Cir. 1981); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). A MMWA claim, however, relies upon the existence of a viable state law warranty claim. *O'Connor*, 477 F.Supp.3d at 717; *see also Schiesser v. Ford Motor Co.*, No. 16-cv-730, 2017 WL 1283491, at *4 (N.D. Ill. Apr. 6, 2017).

Because Plaintiff cannot assert a valid state law warranty claim, his MMWA also fails. Accordingly, this Court grants Defendant's motion to dismiss Plaintiff's MMWA claim.

### C.    Violation of the ICFA

Finally, Defendant seeks to dismiss Count III because Plaintiff fails to adequately plead a claim based upon either deceptive conduct or unfair practices. [49] at 6. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits: "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2.

An ICFA claim requires: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer*, 922

14

N.E.2d 309, 313 (Ill. 2009)). An individual may recover for unfair or deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Fraud claims predicated upon deception, whether a misrepresentation or an omission, must also adhere to the heightened pleading standard of Rule 9(b). *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *see also Quitno v. Gen. Motors, LLC*, No. 18-cv-07598, 2020 WL 777273, at *3 (N.D. Ill. Feb. 18, 2020).

Rule 9(b) requires a plaintiff averring fraud or mistake to state "with particularity" the circumstances constituting the fraud, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014), to provide, in other words, "the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation omitted). Rule 9(b)'s particularity requirement remains flexible, and the "precise details that must be included in a complaint 'may vary on the facts of a given case.'" *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *Pirelli*, 631 F.3d at 442). Nevertheless, plaintiffs still must insert "precision and some measure of substantiation into their allegations of fraud." *Id.* (quotation omitted).

### 1. Deceptive Act or Practice

Plaintiff concedes that his complaint fails to allege sufficient facts concerning any deceptive conduct on Defendant's part, [55] at 8, and the Court thus finds that Plaintiff has failed to state a claim for violation of the ICFA based upon any deceptive act or practice.

15

## 2.    Unfair Practices

Plaintiff contends that he has sufficiently alleged a claim for violation of the ICFA based upon an unfair practice.  But Defendant seeks to dismiss any ICFA claim predicated upon any unfair practice.  [49] at 12; [56] at 7–9.  In considering the parties' arguments on this issue, the Court must first decide whether to apply Rule 8(a)'s less stringent pleading standard, as Plaintiff contends, or Rule 9's heightened pleading standard, as Defendant contends.

An unfair practices claim hinges upon a defendant's allegedly "unfair or unscrupulous" behavior, rather than deceptive conduct.   In determining the unfairness of a course of conduct, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers."  *Robinson*, 775 N.E.2d at 961 (citing *F.T.C. v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5 (1972)).  The injury must "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided."  *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010).

The applicable pleading standard frequently becomes an issue when a plaintiff alleges both unfair and deceptive practices under the ICFA.  Deceptive conduct claims under the ICFA must satisfy Rule 9(b)'s heightened pleading standard, whereas unfair practice claims not premised upon fraud need only comply with less demanding pleading standard of Rule 8(a).  *Kahn v. Walmart, Inc.*, 107 F.4th 585, 601 (7th Cir.

16

2024) (citing *Camasta*, 761 F.3d at 737). The applicable pleading standard does not turn on a formalistic invocation of the word "unfair" but rather depends upon the factual allegations contained in the complaint. *Id*. Plaintiffs cannot invoke the "unfair practice" prong of the ICFA to bypass Rule 9(b)'s particularity requirements if the claim remains "entirely grounded" in fraud. *Camasta*, 761 F.3d at 737; *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud'–in other words, one that is premised upon a course of fraudulent conduct–can implicate Rule 9(b)'s heightened pleading requirements.").

Plaintiff alleges that, "Ford's practices offend public policy, are immoral, unethical, oppressive, and unscrupulous, predatory against the established moralities of society, caused substantial injury to consumers, and pose a risk to public safety." [1] ¶ 54. And he argues that this threadbare recital of the elements of an ICFA unfair practices claim adequately "separates out unfair practices from deceptive practices." [55] at 8. But fundamentally, Plaintiff's allegations remain predicated upon deceptive behavior, as opposed to unfair or unscrupulous practices: the factual allegations in the complaint focus upon the primary claim that Defendant omitted material information about defects in the 1.6L EcoBoost engine. *See* [1] ¶ 3 ("At all relevant times, Ford knew the 1.6L EcoBoost engines were defective and prone to coolant loss and premature failure, yet omitted these material facts from Plaintiff and other Class members."); *id*. ¶ 51 ("Defendant's conduct, as described above, in omitting the facts that the Subject Vehicles contained defective engines, constitutes an unfair practice and was likely to mislead a reasonable consumer.").

17

Merely citing the elements of an ICFA unfair practices claim does not transform the claim here, which remain entirely premised upon a course of purportedly fraudulent conduct. *See Pirelli*, 631 F.3d at 446–47 (rejecting plaintiff's argument that the pleading requirements of Rule 8(a) applies to his claim because he included an allegation of fraudulent conduct that was "unfair" under the ICFA); *Camasta*, 761 F.3d at 737 (simply adding unfairness language does not alter the fact that allegations are entirely grounded in fraud under the ICFA); *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12-cv-9873, 2013 WL 2151551, at *2 (N.D. Ill. May 16, 2013) (holding that courts evaluate concealment cases "under the deception prong of the ICFA"); *Stavropoulos v. Hewlett-Packard Co.*, No. 13-cv-5084, 2014 WL 7190809, at *3 (N.D. Ill. Dec. 17, 2014) (rejecting the plaintiff's characterization of his claims as an unfair practice because the complaint was "plainly based on allegedly deceptive, rather than unfair or unscrupulous, conduct"); *Quitno*, 2020 WL 777273, at *4 (N.D. Ill. Feb. 18, 2020) (merely citing the elements of an ICFA unfair practices claim does not transform the claim when the unfair practice allegation was based entirely upon allegedly deceptive statements). Because Plaintiff's unfair practices claims are entirely grounded in a fraud arising from Defendant's alleged omission of material facts, he must comply with Rule 9(b)'s heightened pleading requirements. Moreover, having conceded that he failed to allege sufficient facts regarding Defendant's representations or omissions to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), Plaintiff's ICFA claim fails.

### 3.   Statute of Limitations

Finally, Defendant argues that Plaintiff's ICFA claims remain barred by a three-year statute of limitations, because Plaintiff knew or should have known of his claim by January 2018, but he did not file suit until February 25, 2021.  [49] at 13–14.  Plaintiff acknowledges that he may have learned of his injury in January 2018, but he disputes knowing that his injury was wrongfully caused on this date; rather, he contends that ascertaining the start date for the statute of limitations requires additional information that "may become available at a later time in this litigation." [55] at 12.

Under the ICFA, actions for damages remain subject to a three-year statute of limitations period.  815 ILL. COMP. STAT. 505/10a(e).  An ICFA limitations period begins to run when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)).  Under the discovery rule, the limitations period "begins when the injury could have been discovered through the exercise of appropriate diligence, not discovery of the actual injury." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000); *see also In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009) (The limitations period begins when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.") (quoting *Knox.*, 430 N.E.2d at 980–81).  Although the discovery rule does not require

19

a plaintiff to file suit immediately after the plaintiff has knowledge of an injury, it does not "permit a plaintiff to sit on his or her rights until such time as the plaintiff knows that he or she has a cause of action." *Tartan Constr., LLC v. New Equip. Servs. Corp.*, No. 17-cv-5950, 2018 WL 4563079, at *2 (N.D. Ill. Sept. 24, 2018) (quoting *Kremers v. Coca-Cola Co.*, 712 F.Supp.2d 759, 764 (S.D. Ill. 2010)).

Plaintiff's ICFA claim stems from information available to both parties before and around the time Plaintiff purchased his vehicle. Plaintiff asserts that the NHTSA began receiving complaints concerning Ford Escape and Ford Fusion engine defects shortly after the vehicles were made available for sale. [1] ¶¶ 16, 52. Similarly, Plaintiff includes two samples of consumer complaints related to defective 1.6L EcoBoost engines that were submitted to an online website, which either pre-date or coincide with Plaintiff's purchase of his vehicle in December 2017. *Id.* ¶¶ 13, 52. Additionally, Plaintiff alleges that Defendant issued a series of recalls relating to the coolant loss in Ford Escape and Ford Fusion vehicles in 2012, 2013, and 2017. *Id.* ¶¶ 16–18, 52. Plaintiff had access to this information in January 2018, yet he argues that the start date for the statute of limitations occurred later, on some as yet undetermined date. [55] at 12. Plaintiff provides no factual support for a later statute of limitations start date, nor does he explain why he could not have discovered his cause of action in good-faith in January 2018. He has not, in other words, alleged a factual basis to apply the discovery rule to toll the three-year limitations period on his ICFA claim. *See Tartan*, 2018 WL 4563079, at *4. As a result, even if Plaintiff had alleged sufficient facts to support an ICFA claim, it would be time-barred in any

20

event.

### IV.    Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss [48] and dismisses Plaintiff's complaint without prejudice.  Because the Court cannot say on this record that any amendment would be futile, the Court grants Plaintiff leave to file an amended complaint, to the extent he can do so, consistent with his obligations under Rule 11.  If Plaintiff declines to amend within 21 days of the entry of this order, the Court will dismiss this case.

Date: February 12, 2026                              Entered:

John Robert Blakey
United States District Judge